THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
STERLYN W. WOODS, Defendant-Appellant.

First District (4th Division)   No. 79-902

Opinion filed December 27, 1979.

James H. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joel A. Eisenstein, and Cary J. Wintroub, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

Sterlyn W. Woods, defendant, was charged with murder and after a bench trial in the circuit court of Cook County, was found guilty of involuntary manslaughter (Ill. Rev. Stat. 1977, ch. 38, par. 9—3). He was sentenced to a four-year prison term with an additional one-year term of mandatory supervised release. On appeal, defendant contends he was not found guilty beyond a reasonable doubt after presenting a credible and consistent defense of self-defense.

We affirm.

Defendant, who was then 18 years of age, was charged with the September 25, 1978, fatal beating of Tarran Jones. The pertinent evidence discloses that at about 9 p.m. that evening, defendant was at Miss Quincy's Lounge, where occasionally he was called upon to maintain order and sometimes to assist as a disc jockey. Defendant was regularly employed as a meat-cutter and lifter. At the time of the occurrence, he was 6 feet 3 inches tall and weighed 200 pounds. Defendant had been a member of his high school football team but had no training in boxing.

Minnie Senior testified on behalf of the State. She asserted that she was employed as a barmaid in the lounge. On the evening of the incident, several men came into the lounge. They did not order any drinks. She then told defendant to tell the men that if they did not purchase any drinks, they would have to leave.

She noticed defendant relay her message and then observed that one of the men appeared to be angry. She talked to the men again and they seemed to be ready to leave, when suddenly a fight broke out. While she did not see how the fight started, she did see one of the men strike defendant with a beer bottle. She also observed that defendant was hit over the head with a flower pot. A crowd had formed in front of the bar, around the area where the men were fighting. Shortly thereafter, the people who worked at the lounge got everybody out of the lounge and closed the door. She called the police who came and "saw everything was over and they left."

Senior testified further that as the police left, someone came into the lounge and said there was a person outside who appeared to have a seizure. She then called the police. She went outside of the lounge and saw a man lying on the ground. She had seen that man previously but he was not one of the men who had engaged in the fight with defendant. She thought she saw the man on the ground bleeding from the mouth, but breathing. She described the man as black, 5 feet 8 or 9 inches, and sort of thin.

On cross-examination, Senior stated that on a number of times prior to the incident, she had seen one of the men who had been fighting with defendant. She described that man as being about 6 feet tall and weighing 180 pounds. She described the other men who had engaged in the fight and said that they had appeared disturbed by defendant's request for them to buy a drink. "They said they didn't like the way he had asked them." She acknowledged that she had told a police investigator that she had observed one of the men start fighting with defendant. Further, she saw defendant by himself, fighting with three of the men.

Senior recounted going outside of the lounge and seeing a man lying on the ground. She described the position of his body and the surrounding area. She acknowledged that she saw no "pipes, guns, baseball bats or large objects lying near the person * * * ." She again asserted that she observed defendant being punched by the men during the course of the fight in the lounge and noticed defendant bleeding from a bruise near his ear. He had been struck with a beer bottle and over the head with a flower pot.

The prosecution then called assistant state's attorney James Heinzel as its next witness. He related the substance of the three conversations he had with defendant on October 2, 1978. He described the procedure relating to the defendant making a statement which was reduced to writing and then signed by defendant. The statement, without objection, was admitted into evidence on motion of the State.

The forensic pathologist called by the State testified that Tarran Jones' death was caused by bleeding within the membranes of the brain, and this bleeding was produced by blunt force injuries.

Defendant, testifying on his behalf, stated that some time during the evening of September 25, 1978, he observed four men enter the lounge where he sometimes helped the disc jockey spin records and where he helped "keep the peace." They remained there without ordering any drinks. At that point, Minnie Senior, the barmaid, directed him to notify the men that they had to order drinks or leave the lounge.

Defendant asserted that he approached the men and related the barmaid's message, whereupon one of the men who appeared to be about 6 feet 1 inch tall and weighing about 210 pounds, "poked his chest out * * * bumping against me and I pushed him off me." At this, the man struck him under the eye. One of the other men struck him with a glass; another hit him on the head with a beer bottle and another hit him over the head with a flower pot.

Defendant, bleeding from wounds on his head and ear, drove his head into the first man's chest and then struck the man in the face five or six times before being held back by someone in the lounge.

Defendant testified further that the man he had struck then ran out of

the lounge and into the street. He chased after the man, but was unable to find him. He stopped and saw Tarran Jones, whom he did not know, standing a few feet from him.

Defendant testified that as he and Jones approached each other, defendant's arm was raised and his fist was clenched as he asked, "You one of them too, ain't you?" Jones, who did not answer the question, punched defendant in the face. The defendant asserted that he then struck Jones on the left side of his head and the blow knocked Jones against an iron gate. He struck Jones twice more and, as Jones fell covering his face, he then hit Jones a fourth time. Defendant stated he would have hit Jones again, but someone pulled him away.

Defendant further testified that he believed Jones was one of the men who had attacked him in the lounge and that at the time of the incident with Jones, he believed that he was in danger of being hurt by Jones. He felt Jones was about to hit him again and he was fearful that he would be subjected to great bodily harm if he did not defend himself.

Defendant also stated that he had arranged a meeting at the police station with the police officer who was investigating the incident. He also testified about his cooperation with the authorities.

On cross-examination defendant testified that while he did not believe he was in danger of being killed by Jones, he was fearful of being hurt. He acknowledged that Jones was not armed. Defendant also admitted that the blow Jones rendered did not hurt him. Further, Jones swung at him only that one time.

Defendant's written statement admitted that he was unsure that Jones was one of the men in the lounge with whom he had fought. Also, defendant acknowledged "you know, how revenge builds up inside me."

After closing arguments were heard, the trial judge found defendant guilty of involuntary manslaughter. Defendant's motion for a new trial was denied.

Subsequently, sentence of imprisonment for four years plus one year mandatory supervised release was imposed. This appeal followed.

OPINION

■■ Defendant contends he acted in self-defense. The principles of law applicable to this issue are not in dispute. Section 7—1 of the Criminal Code provides in pertinent part:

> "[A person] is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another * * * ." (Ill. Rev. Stat. 1977, ch. 38, par. 7—1.)

Self-defense is an affirmative defense (Ill. Rev. Stat. 1977, ch. 38, par.

7—14). But, where the defendant presents "some evidence" tending to prove this affirmative defense, the burden then rests upon the State to prove guilt beyond a reasonable doubt as to that issue, together with all other elements of the offense. Ill. Rev. Stat. 1977, ch. 38, par. 3—2; see also *People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681; *People v. Warren* (1965), 33 Ill. 2d 168, 210 N.E.2d 507.

Whether a belief as to the necessity of using deadly force is reasonable depends upon the surrounding facts and circumstances. (See *People v. Morgan* (1969), 114 Ill. App. 2d 421, 252 N.E.2d 730.) Thus, it presents an issue to be determined by the trier of fact. (*People v. Wood* (1974), 24 Ill. App. 3d 15, 320 N.E.2d 32.) It is the function of the trier of fact to resolve conflicts in the evidence, determine the credibility of the witnesses (*People v. Davis* (1975), 33 Ill. App. 3d 105, 337 N.E.2d 256) and resolve beyond a reasonable doubt whether the force used was reasonably required. A reviewing court will not disturb the determination of the trier of fact that the defendant's belief was unreasonable, unless the evidence is so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt as to defendant's guilt. See *People v. Diaz* (1976), 38 Ill. App. 3d 447, 348 N.E.2d 199.

In the instant case, there was ample evidence for the trial court, as trier of fact, to conclude that defendant did not reasonably believe the force he exerted was necessary to prevent imminent death or great bodily harm to himself. Although defendant testified that after Jones struck him, he was afraid of being "hurt," he also asserted that the one and only blow struck by the deceased did not hurt him. He estimated that Jones was 5′ 7″, "sort of short" and of average build. The record discloses that defendant was 6′ 3″ tall and that he had played high school football. The trial court could well determine from the facts and details of the surrounding circumstances that it was unreasonable for the defendant to believe the deceased could or would cause him great bodily injury.

■■ The unreasonableness of defendant's belief is evidenced by the aggressive role he assumed during the altercation. Although he did not provoke the original fight in the lounge, he pursued the combat after it was abandoned by the original aggressors. Thus, the defendant himself became the aggressor when he chased a participant outside the lounge and encountered Jones. The right to defend oneself does not permit the pursuit and injuring of an aggressor after the aggressor abandons the quarrel. (*People v. Shappert* (1975), 34 Ill. App. 3d 683, 340 N.E.2d 282; *People v. Hines* (1975), 31 Ill. App. 3d 295, 334 N.E.2d 233; *People v. Fort* (1970), 119 Ill. App. 2d 350, 256 N.E.2d 63.) This is especially true here, since defendant was not even certain that Jones was one of those involved in the altercation in the lounge.

Defendant admitted he approached Jones with arm raised and fist

clenched. He also stated he was angry and prepared to strike while asking the deceased if he was "one of them." Defendant admitted that as he approached the deceased he wanted to hit him. His statement indicates he was ready to strike the deceased when the deceased first hit him. From this testimony, the trial court could have reasonably concluded that although the deceased rendered the first blow, it was only to prevent defendant's attack. The circumstances and events described by defendant fail to buttress his defense of self-defense.

Importantly, defendant also indicated he was acting in retaliation and not in self-defense when he struck Jones. Defendant's testimony supports the conclusion that defendant beat Jones because he believed Jones "was one of them," not because he reasonably believed the force he used was necessary to prevent imminent death or great bodily harm to himself:

"Q. The man you struck was not one of the 4 individuals who went into the Lounge earlier when you had the trouble, is that right?

A. I don't know, that is, you know, how revenge builds up inside me.

Q. You took it out on him?

A. I went toward him * * *

A. I said to him you one of them too ain't you? That is when he swung.

Q. You were not sure at that time whether he was one of the ones who had run from the Lounge or not?

A. No."

The right of self-defense does not justify an act of retaliation or revenge. *People v. Thornton* (1962), 26 Ill. 2d 218, 186 N.E.2d 239; *People v. Dillon* (1962), 24 Ill. 2d 122, 180 N.E.2d 503; *People v. Munguia* (1975), 33 Ill. App. 3d 880, 338 N.E.2d 574.

■■ We believe the totality of the evidence presented provided no basis upon which the court could conclude that defendant reasonably believed the use of force was necessary to prevent great bodily harm to himself. The trial court correctly determined beyond a reasonable doubt that defendant did not act in self-defense.

## II

We further find the evidence supports defendant's conviction for involuntary manslaughter. Involuntary manslaughter is the killing of an individual without lawful justification as the result of the reckless performance of some act, whether lawful or unlawful, which is likely to cause death or great bodily harm. (Ill. Rev. Stat. 1977, ch. 38, par. 9—3; *People v. York* (1978), 57 Ill. App. 3d 243, 373 N.E.2d 90; *People v. Hines*

(1975), 31 Ill. App. 3d 295, 334 N.E.2d 233.) The Criminal Code defines recklessness as follows:

"A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. * * * "(Ill. Rev. Stat. 1977, ch. 38, par. 4—6.)

Thus, the only mental state required is the conscious disregard of a substantial and unjustifiable risk. *People v. Bauman* (1975), 34 Ill. App. 3d 582, 340 N.E.2d 178.

We find that defendant's actions clearly fall within the breadth of this definition. (*People v. Parr* (1976), 35 Ill. App. 3d 539, 341 N.E.2d 439.) After Jones struck defendant once, a blow which admittedly did not hurt, defendant struck Jones four times. One blow was rendered as Jones, who appeared dazed, fell to the ground. Defendant saw Jones holding his head after he fell to the sidewalk. Defendant then bent over him. Although Jones no longer presented any threat to defendant and it was apparent that he was incapable of causing great bodily harm to anyone, nevertheless, defendant would have continued beating Jones if he had not been pulled away. We believe these actions on the part of defendant evidence the type of recklessness defined in the statute.

● 4 We find that the evidence is not so improbable, unreasonable or insufficient so as to leave a reasonable doubt as to defendant's guilt, thereby compelling reversal of his conviction. *People v. Davis* (1975), 33 Ill. App. 3d 105, 337 N.E.2d 256.

For the reasons set forth in the opinion, we affirm defendant's conviction.

Affirmed.

JIGANTI, P. J., and ROMITI, J., concur.