No. 4--97--0759

December 4, 1998

_________________________________________________________________

    IN THE

                   APPELLATE COURT OF ILLINOIS

                         THIRD DISTRICT

                           A.D., 1998

THE PEOPLE OF THE STATE         )  Appeal from the Circuit Court

OF ILLINOIS,                    )  of the 9th Judicial Circuit,

       )  McDonough County, Illinois

Plaintiff-Appellee,       )

                                )

v.                         )  No. 96--CF--84

  )

KENDALL MOORE,                  )  Honorable

  )  William D. Henderson,

Defendant-Appellant.       )  Judge Presiding

________________________________________________________________

JUSTICE LYTTON delivered the opinion of the court:               

________________________________________________________________

Following a jury trial, defendant Kendall Moore was convicted of second degree murder, armed violence, aggravated battery and mob action (720 ILCS 5/9--2(a)(2), 33A--2, 12--4(a), 25--1(a) (West 1996)).  He was sentenced to concurrent prison terms of six years for second degree murder, three for armed violence, two for aggravated battery and one for mob action.  Defendant appeals, claiming that (1) the trial judge erred in sustaining the State's objection to extrinsic evidence offered by defendant to impeach a State's witness; (2) his convictions of armed violence and/or aggravated battery must be vacated; and (3) the State failed to prove beyond a reasonable doubt that he did not act (a) in self defense, or (b) recklessly.  We affirm in part and vacate in part.

FACTS
 

Damenion Burnett died as a result of blunt trauma to the head.  Charges of first degree murder, armed violence, aggravated battery and mob action were brought against defendant and Darrell Mitchell, who were tried jointly.  Testimony at trial centered around two fights in Macomb, Illinois, on the night of June 14 and early morning hours of June 15, 1996.

The State's evidence established that defendant, Mitchell, Steve Tinch and several college friends were having drinks at the Regulator Bar around midnight, June 14.  Defendant and his companions belonged to a social fraternity known as the Omega Psi Phi fraternity (Q-dogs), which was affiliated with the Zeta Phi Beta sorority (Zetas).  Members of both groups were in the bar, as well as other non-affiliated friends from the neighborhood.  Eileen Tarjan and her boyfriend, Damenion Burnett, were not Zetas or Q-

dogs but socialized with them.  As the bar was closing, a Zeta accused Tarjan of burning her with a cigarette.  The confrontation between the two women erupted into a fight which spilled out into the street.  Defendant and Mitchell entered the melee, along with Burnett and his friends, Mike Hawkins and Delrico Nelson.  The fight ended abruptly and the crowd dispersed when Hawkins fired two shots into the air from a nine-millimeter semi-automatic gun. 

Hawkins' gun was handed to Nelson as they drove away from the bar.  Nelson next met Burnett at the apartment in Villa Westbrook where Tarjan and Burnett stayed.  Defendant, Mitchell and Tinch went to Mitchell's apartment in Villa Westbrook, one floor above Tarjan's.  Defendant took a baseball bat into Tarjan's apartment and banged it on a stereo speaker.  He was asked to leave, and he did.

Burnett and Nelson started to fight with Tinch.  Nelson retreated, and the confrontation between Tinch and Burnett moved outside, where Mitchell and defendant joined in.  Tarjan testified that she saw defendant and another man fighting with Burnett.  She said that Burnett was unarmed and was trying to stand while the two men beat him.  She could not see if a weapon was used in the fight, but she saw Nelson fire a couple of shots into the air and the grass before she left the scene with a friend.  On cross-

examination, Tarjan admitted that she had lied to the police when she told them she neither saw nor heard any shooting outside her apartment. 

Nelson testified that he stood outside the apartment building and watched the fight.  He said defendant went to his truck and returned with a bat to fight with Tinch and Mitchell against Burnett.  He saw defendant club Burnett in the head.  After Burnett fell, defendant struck again while Mitchell kicked and stomped on Burnett.  Nelson yelled, "Stop!" and fired two shots into the ground and another into the air.  Other witnesses heard between four and eight shots.  Nelson said the fight was still in progress when he heard police sirens.  He dropped the gun and ran from the scene.  

Forensic testimony established that six nine-millimeter casings and two bullets were recovered from the ground immediately outside Tarjan's apartment, two bullets were recovered from buildings across the street, and two casings were found outside the Regulator.  All of the bullets and casings were fired from the same nine-millimeter semi-automatic gun.

Burnett was declared brain dead on June 17, 1996.  In addition to a fractured skull, both sides of his jaw were broken and his liver was lacerated.  There was no evidence that he had been shot.   In the defense case, Mitchell testified that he and Tinch used Burnett's body to shield themselves from Nelson's fire.  Both defendant and Mitchell testified that defendant joined the fight after Nelson fired the gun.  Defendant admitted he clubbed Burnett several times with the bat, but testified that he believed Burnett had a gun.  At some point during the beating, the bat broke.  Defendant and Mitchell fled the scene, and defendant deposited the head of the bat in a nearby dumpster.  The police later recovered the handle portion of the bat from the ground next to Burnett's body.

Jesse Johnson, also testifying for the defense, stated that he followed defendant and Mitchell from the Regulator to Villa Westbrook.  He said he was talking with friends when he heard shots.  He and his friends walked to Tarjan's apartment and saw a crowd of people in the street, including Tarjan, who was crying.  Johnson asked her if she had seen what happened and who did it.  Tarjan said that her boyfriend got into a fight, but she denied knowing what had happened.

Counsel then asked if Johnson had talked with Tarjan later on June 15.  Johnson stated he had a conversation with her around 1 p.m. outside his apartment.  The prosecutor objected, arguing that defense counsel had failed to lay a proper foundation for impeachment of Tarjan by a prior inconsistent statement.  Defense counsel stated that he believed Johnson would testify that Tarjan told him during the second conversation that she did not see the fight and did not know what had happened.  The court sustained the prosecutor's objection.

The jury returned verdicts finding defendant guilty of second degree murder, armed violence, aggravated battery and mob action.

The jury found Mitchell guilty of mob action.   

I.

ADMISSIBILITY OF IMPEACHMENT TESTIMONY

Defendant claims that the trial court erred in refusing to admit testimony to impeach Eileen Tarjan with extrinsic testimony of a prior inconsistent statement.  Defendant acknowledges that the rule in this State requires that a proper foundation be laid before a witness may be impeached by extrinsic evidence of a prior inconsistent statement.  
People v. Smith
, 78 Ill. 2d 298, 399 N.E.2d 1289 (1980).  The foundation is satisfied by presenting the place, circumstances and substance of the earlier statement to the witness and giving her an opportunity to explain the inconsistency.  
Smith
, 78 Ill. 2d 298, 399 N.E.2d 1289 (1980).  Defendant argues that the better rule is to give the trial judge discretion to admit the impeachment testimony subject to recalling the impeached witness.  He contends that the trial judge erred by not exercising his discretion before sustaining the State's objection.  

An appellate court lacks authority to overrule decisions of the Illinois Supreme Court.  
People v. Goebel
, 284 Ill. App. 3d 618, 672 N.E.2d 837 (1996).  In 
Smith
, our supreme court ruled that extrinsic evidence of a witness' prior inconsistent statement must be excluded if a party failed to lay an adequate foundation before attempting to introduce the inconsistent statement.  
Smith
, 78 Ill. 2d 298, 399 N.E.2d 1289.   

Although Federal Rules of Evidence, Rule 613(b) (Fed. R. Evid. 613(b), permits an impeached witness to be recalled to explain the inconsistency after extrinsic evidence of a prior inconsistent statement is introduced, (see 
United States v. Barrett
, 539 F.2d 244 (1st Cir., 1976) this court cannot abandon the order of proof set forth in 
Smith
.  Unless our supreme court rules otherwise, the rule in this State is that a foundation must first be laid before the extrinsic evidence may come in.

During cross-examination, defense counsel failed to direct Tarjan's attention to the place, circumstances and substance of the statement to Johnson.  Accordingly, the trial court did not err in excluding the proffered impeachment testimony during counsel's direct examination of Johnson.  

Defendant's suggestion that defense counsel provided ineffective assistance by failing to perfect the impeachment or to recall Tarjan to the witness stand is not well taken.  Defendant cites no factual support or argument for such a claim; therefore, this court need not consider it.  See 155 Ill. 2d R. 341(e)(7).

II.

ONE ACT-ONE CRIME

Defendant also argues that his convictions of armed violence and aggravated battery based on great bodily harm must be vacated because both convictions were based on the same physical act as the second degree murder conviction.  The State responds that defendant's argument was waived or, in the alternative, that all three convictions should stand because the evidence established that defendant delivered multiple blows.

It is well settled that a criminal defendant may not be convicted of more than one offense carved from the same physical act.  
People v. King
, 66 Ill. 2d 551, 363 N.E.2d 838 (1977).  However, where the defendant committed multiple acts, multiple convictions are improper only if they are lesser included offenses.  
People v. Rodriguez
, 169 Ill. 2d 183, 661 N.E.2d 305 (1996).  Objections to surplus convictions, though technically waived, may be reviewed as plain error.  
People v. Lee
, 247 Ill. App. 3d 505, 617 N.E.2d 431 (1993). 

In this case, defendant was charged with (1) aggravated battery based on great bodily harm, (2) armed violence with a category III weapon based on aggravated battery causing great bodily harm, and (3) murder.  The aggravated battery charge was a lesser included offense of the armed violence charge and should be vacated, since the elements of the aggravated battery served as the predicate felony for armed violence.  See 
People v. Donaldson
, 91 Ill. 2d 164, 435 N.E.2d 477 (1982).

By contrast, the armed violence charge was not a lesser included offense of second degree murder.  Armed violence contains a dangerous weapon element (720 ILCS 5/33A--2 (West 1996)) which is not included in the definition of second degree murder (720 ILCS 5/9--2 (West 1996)).  Since multiple acts were committed, convictions of both offenses may stand.  
Rodriguez
, 169 Ill. 2d 183, 661 N.E.2d 305.  

The armed violence conviction and sentence is affirmed and the Class 3 aggravated battery conviction sentence is vacated.

III.

SUFFICIENCY OF THE EVIDENCE
 

Last, defendant argues that his convictions must be reversed because the State's evidence was insufficient to prove that he did not act in self-defense.  In the alternative, he contends that the evidence proved only that he acted recklessly.

A.  Self-Defense

Self-defense is an affirmative defense, and once a defendant raises it, the State has the burden of disproving it beyond a reasonable doubt.  720 ILCS 5/7--14 (West 1996); 
People v. Estes
, 127 Ill. App. 3d 642, 469 N.E.2d 275 (1984).  A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the other person's imminent use of unlawful force.  720 ILCS 5/7--1 (West 1996).  Whether the defendant was acting in self-defense is a question for the trier of fact.  
People v. Hanson
, 138 Ill. App. 3d 530, 485 N.E.2d 1144 (1985).  The reasonableness of a defendant's belief as to the need for the kind and amount of force used depends upon the surrounding facts and circumstances.  
People v. Woods
, 80 Ill. App. 3d 56, 398 N.E.2d 1086 (1979).  On review, the role of the fact-finder is preserved, and this court will not reverse a conviction unless, after viewing all of the evidence in the light most favorable to the State, no rational trier of fact could have found the defendant guilty beyond a reasonable doubt.  
People v. Collins
, 106 Ill. 2d 237, 478 N.E.2d 267 (1985). 

In this case, the jury heard conflicting testimony as to the events immediately preceding and during the beating of Burnett.  Nelson admitted to shooting two rounds in the grass and once in the air to stop the fighting in the street.  Other witnesses testified that Nelson fired several rounds, and the physical evidence substantiated their testimony that he fired multiple rounds into the air.  The State's witnesses also testified that Burnett was unarmed, and there was no physical evidence that he had a weapon.  Defendant's testimony that he thought Burnett had a gun was unbelievable.

The State's witnesses further testified that after Burnett fell to the ground and the shooting stopped defendant continued to strike Burnett's head and body.  The pathologist's testimony of Burnett's injuries substantiated the State's evidence that the unarmed victim was bludgeoned repeatedly.  At some point, defendant swung the bat with sufficient force to break it and fracture Burnett's skull.  Based on this evidence, the jury was entitled to find beyond a reasonable doubt that defendant's belief that he needed the kind and amount of force he used to defend himself was unreasonable.  

B.  Recklessness

In the alternative, defendant argues that he committed only involuntary manslaughter because he acted recklessly.  The jury was instructed on recklessness and involuntary manslaughter, as well as first and second degree murder.  By its verdict, the jury rejected the mitigating defense to reduce the killing to involuntary manslaughter and found that defendant's actions were intentional, not merely reckless.  The evidence supports the jury's verdict.  See 
People v. Maldonado
, 240 Ill. App. 3d 470, 608 N.E.2d 499 (1992).  Accordingly, we affirm defendant's second degree murder conviction. 

IV.

SENTENCING ORDER

Finally, although defendant has not raised the issue in this appeal, we note that the written sentencing order erroneously indicates that three-year sentences were imposed for each of defendant's Class 2, 3 and 4 offenses.  At the close of the sentencing hearing, the court orally imposed minimum terms of three, two and one year for these offenses.  See 730 ILCS 5/5--8--

1(a)(5),(6),(7) (West 1996).  The court's oral pronouncement of sentence controls over the written order.  
People v. Smith
, 242 Ill. App. 3d 399, 609 N.E.2d 1004 (1993).  Accordingly, we hereby correct the mittimus by ordering that defendant's sentence for Class 4 mob action is one year, to be served concurrently with his three- and six-year sentences for armed violence and second degree murder, respectively.  See 
People v. Guajardo
, 262 Ill. App. 3d 747, 636 N.E.2d 863 (1994) (noting that sentencing order may be corrected by reviewing court if there is no other reason for remand). 

CONCLUSION

The defendant's conviction and sentence for aggravated battery are vacated, and his sentencing order for mob action is corrected.  In all other respects, we affirm the judgment of the circuit court of McDonough County.

Affirmed in part; vacated in part. 

HOMER, P.J., and HOLDRIDGE, J., concur.