2 February 2000

NO. 4-98-0413

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,   ) Appeal from

Plaintiff-Appellee,    )     Circuit Court of

    ) Sangamon County

IVORY LEE,    )     No. 97CF272

Defendant-Appellant.    ) 

    )   Honorable

    ) Jeanne E. Scott,

    )     Judge Presiding.

___________________________________________________________________

JUSTICE GARMAN delivered the opinion of the court:

A jury convicted defendant Ivory Lee of the second degree murder (720 ILCS 5/9-2 (West 1998)) of Wile Trotter, aggravated battery with a firearm (720 ILCS 5/12-4.2 (West 1998)) of Wile Trotter, and aggravated battery with a firearm of Willis Trotter.  On appeal, defendant argues that (1) the State failed to prove beyond a reasonable doubt that he did not act in self-defense in shooting the Trotters, and (2) his conviction for the second degree murder of Wile must be vacated under the one-act, one-crime rule.  We affirm in part and vacate in part.

I. BACKGROUND

During the night between February 6 and 7, 1997, defendant went to Kelu Anderson's home, where he met his friends, Richard Hatchett, Lester Davis, Travis McCullough, Demetrius McCullough, and Chris Tapley.  They decided to go to a party at the Sky Harbor Inn.  They brought a handgun with them to the party but initially left it in one of their cars. 

About an hour after defendant and his friends arrived at the party, Wile and Willis Trotter arrived.  Wile and Willis were twin brothers, allegedly known for carrying guns. Ten minutes later, defendant, Davis, and Hatchett went to their cars to get some drinks they had brought.  Defendant took the handgun from the car and tucked it in his waistband.  They all went back inside to the party.

About 15 minutes later, defendant and his friends decided to leave.  When defendant went outside, he saw Wile talking to Travis and Willis standing nearby.  Willis walked over and stood by Wile.  Willis began arguing with Hatchett about an incident that had occurred during Christmas, a few months previously.  Appar

ently, Willis had interceded in an argument between Hatchett and a third party, which had resulted in a fight between Hatchett and Willis.  Someone started shooting and Hatchett went to jail.  Hatchett now told Willis that he should have minded his own business.  Hatchett and Willis yelled at each other and exchanged profanities.  According to defendant, Demetrius, and Davis, at one point Willis appeared to reach for a gun inside his pocket.  Believing Willis was going to shoot, defendant pulled out his handgun and shot Willis.  Then, believing Wile was also reaching for a gun in his coat, defendant shot Wile at least three times.  Willis received a bullet wound in the stomach.  Wile received one bullet wound in the chest and two in the thigh and leg.  Defendant and his friends fled the scene.

The police arrived at the scene a few minutes later.  A large crowd had gathered.  Willis and Wile lay approximately 75 to 100 feet apart.  Wile was conscious and told Officer Paul Earley that he had been shot by Davis and Travis.  Willis was also conscious but refused to talk to the police.  Once the area was secured and Wile and Willis were taken to the hospital, the officers searched the area for weapons, about 30 to 45 minutes later.  None of the officers found any weapons in the area.  No weapons were recovered from the person of Wile or Willis.  Wile died later that day from the bullet wound in his chest, which had caused massive hemorrhaging from the liver and aorta.

Officer Steven Bennett meanwhile looked for Travis and Davis.  He saw a maroon two-door Oldsmobile Cutlass pass by him, shined his spotlight inside, and saw Hatchett, whom he knew to be friends with Travis.  Bennett stopped the car about two blocks away.  Someone ran from the passenger side of the car to some nearby houses.  Defendant later admitted that he was the person who ran from the car.  Davis, Travis, and Demetrius were in the car with Hatchett.  Bennett frisked these men, did not find any weapons, and took them to the police department for questioning. 

Defendant was arrested on March 18, 1997.  Defendant initially claimed he was inside the Sky Harbor Inn at the time of the shooting.  When detectives told him that other witnesses had contradicted his claim, he gave a written statement the next day admitting he shot Wile and Willis.  He was indicted on three counts of first degree murder of Wile:  (1) intentional murder (720 ILCS 5/9-1(a)(1) (West 1998)), (2) knowing murder (720 ILCS 5/9-1(a)(2) (West 1998)), and (3) felony murder (720 ILCS 5/9-1(a)(3) (West 1998)).  The State later dismissed the felony murder count.  Defendant was also indicted on (1) one count of aggravated battery (of Wile), (2) one count of aggravated battery (of Willis), and (3) one count of unlawful use of a weapon by a felon (720 ILCS 5/24-1.1 (West 1998)).  The State later also dismissed the count for unlawful use of a weapon by a felon.

Defendant's trial was held in February 1998.  Defendant raised the affirmative defense of self-defense on all counts.  After hearing the evidence, the jury convicted defendant of second degree murder (of Wile), aggravated battery with a firearm (of Wile), and aggravated battery with a firearm (of Willis).  In April 1998, the trial court denied defendant's posttrial motion.  In May 1998, the trial court sentenced defendant to concurrent terms of 20 years for second degree murder and 15 years for aggravated battery with a firearm for shooting Wile.  These terms were to run consecutively to an 18-year sentence for the aggravated battery with a firearm of Willis.  This appeal followed.

II. ANALYSIS

A. Self-Defense

Defendant first contends that the State failed to prove beyond a reasonable doubt that he did not act in self-defense in shooting Wile and Willis.  We disagree.

Once a defendant raises self-defense as an affirmative defense to murder, the State has the burden of proving beyond a reasonable doubt not only the elements of murder, but also that the defendant did not act in self-defense.  The elements of self-

defense are (1) force is threatened against a person; (2) the person threatened is not the aggressor; (3) the danger of harm was imminent; (4) the threatened force was unlawful; (5) the person threatened actually and subjectively believed a danger existed that required the use of the force applied; and (6) the beliefs of the person threatened were objectively reasonable.  If the State negates any one of these elements, the defendant's claim of self-

defense must fail, and the jury must find the defendant guilty of first or second degree murder.  
People v. Jeffries
, 164 Ill. 2d 104, 127-28, 646 N.E.2d 587, 597-98 (1995).

The standard of review for this issue is whether, taking all of the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that defendant did not act in self-defense.  
People v. White
, 293 Ill. App. 3d 335, 338, 687 N.E.2d 1179, 1181 (1997).  Defendant argues that he properly acted in self-defense because Wile and Willis were known to carry guns and people were frightened of them.  He contends that, on one occasion after Willis' fight with Hatchett during the previous Christmas, the Trotters saw Hatchett, Davis, Travis, Demetrius, and defendant at a friend's house and began shooting at them.  On another occasion, defendant and Davis were at Anderson's home when the Trotters rode down the street and pointed their guns at them but did not shoot.  In January 1998, after defendant shot Wile and Willis, Willis allegedly shot at Germaine Brown, a person unrelated to this case, on two occasions from a moving car.  Defendant suggests this most recent incident is the most convincing evidence of the Trotters' violent behavior.

Defendant further argues that the testimony that Willis appeared to be reaching for a gun in his pocket was uncontradicted except by Willis himself.  Defendant contends Willis' testimony that he was not reaching for a gun and that he never carried a gun prior to defendant's shooting him at Sky Harbor Inn was not credible because his testimony was contradicted by other witnesses and because of his past history of committing violent offenses against defendant and his friends.  Defendant suggests that the reason that the police officers did not find guns on either Wile or Willis or in the area is because sufficient time elapsed between the shooting and the arrival of the police during which the Trotters could have disposed of their guns.  Defendant finds it significant that a pullover that Willis was wearing when he was shot later disappeared and suggests that Willis' gun was likely in the pullover.  

Based upon our review of the record, we conclude that the State established that defendant's belief that deadly force was necessary was unreasonable, thereby negating the sixth element of self-defense and, thus, the entire claim of self-defense.  The record shows that it was uncontradicted that the Trotters did not make any threats to anyone that night, no witness observed either of the Trotters with a gun that night, and the police did not recover a gun from either Willis or Wile or from the scene after the shootings.  While Willis' testimony that he did not make any threatening gestures or carry a gun prior to the Sky Harbor Inn incident may have been contradicted by defendant, Demetrius, and Davis, the jury was entitled to disbelieve these witnesses.  Defendant's behavior in running from the police and initially claiming that he was inside the Sky Harbor Inn at the time of the shooting diminished his credibility.  Further, the State impeached the testimony of Demetrius and Davis with their prior statements as to the Trotters' allegedly threatening gestures, as well as to other facts.  Defendant, Demetrius, and Davis were not any more believable than Willis and the jury was entitled to find Willis' testimony more credible.  
People v. Bradford
, 106 Ill. 2d 492, 502, 478 N.E.2d 1341, 1345 (1985) (it is jury's function to assess credibility of witnesses).  

Moreover, the Trotters' alleged shooting and pointing guns at defendant and his friends on prior occasions were never reported to the police and the jury was also entitled to question whether the events ever took place.  Although Willis' shooting of Brown was reported, the incident took place after the shooting at the Sky Harbor Inn and is of little relevance to the reasonableness of defendant's belief that deadly force was necessary that night.  Even if the Trotters behaved violently in the past, defendant presented little evidence, circumstantial or otherwise, that the Trotters threatened similar violence at the Sky Harbor Inn.  Defendant's claim that the Trotters had guns that night but disposed of them before the police could discover them is mere speculation and was not supported by any evidence at all.

In sum, we conclude that any rational trier of fact could have determined beyond a reasonable doubt that defendant's belief that deadly force was necessary against the Trotters was unreason

able.  Accordingly, the State proved beyond a reasonable doubt that defendant did not act in self-defense.

B. One-Act, One-Crime Doctrine

Defendant next contends that his convictions for the second degree murder of Wile and the aggravated battery of Wile with a firearm were carved out of the same physical act.  He contends that under the one-act, one-crime doctrine espoused by our supreme court in 
People v. King
, 66 Ill. 2d 551, 559-66, 363 N.E.2d 838, 841-45 (1977), his conviction for second degree murder must be vacated.  

Before turning to the merits of defendant's argument, we recognize defendant's concession that he did not properly preserve this issue for appeal.  However, we agree that we may address the argument under the plain error doctrine because defendant's convictions and sentences affect his substantial rights.  
People v. Smith
, 183 Ill. 2d 425, 430, 701 N.E.2d 1097, 1099 (1998).

Turning to the merits, the 
King
 doctrine provides that multiple convictions are not proper where (1) only one physical act was manifested, or (2) where multiple acts were manifested, but some of the convictions are for included offenses.  
King
, 66 Ill. 2d at 566, 363 N.E.2d at 844-45.  The supreme court reaffirmed the 
King
 doctrine in 
People v. Rodriguez
, 169 Ill. 2d 183, 186, 661 N.E.2d 305, 307 (1996).  Analysis under the 
King
 doctrine requires two steps.  First, a court must determine whether a defendant's conduct consisted of separate acts or a single physical act.  An "act" is "'any overt or outward manifestation which will support a different offense.'"  
Rodriguez
, 169 Ill. 2d at 188, 661 N.E.2d at 307, quoting 
King
, 66 Ill. 2d at 566, 363 N.E.2d at 844-45.  If only one physical act was undertaken, multiple convictions are improper.  If separate acts were undertaken, a court must ask next whether any of the offenses are included offenses.  If so, multiple convictions are improper.  
Rodriguez
, 169 Ill. 2d at 186, 661 N.E.2d at 306-07. 

With respect to our first inquiry
, we conclude that defendant's convictions for second degree murder and aggravated battery with a firearm were based on separate acts.  Defendant shot Wile three times.  Although all of the gunshots were to the same victim, Wile, and were proximate in time, each gunshot was a separate overt manifestation that supports multiple convictions.  
People v. Myers
, 85 Ill. 2d 281, 288, 426 N.E.2d 535, 538 (1981) (two cuts with knife to same victim, though close in time, were not one physical act); 
People v. Dixon
, 91 Ill. 2d 346, 355-56, 438 N.E.2d 180, 185 (1982) (separate blows to same victim, though closely related in time, were not one physical act); 
People v. Segara
, 126 Ill. 2d 70, 77, 533 N.E.2d 802, 805 (1988) (two acts of criminal sexual assault upon same victim occurring with little or no break between were not one physical act).  The fatal gunshot in the chest supports the second degree murder conviction and the gunshots to the leg and thigh support the aggravated battery with a firearm conviction.

Having found that multiple acts were undertaken, our next inquiry is whether either offense is an included offense of the other.  Defendant contends that aggravated battery with a firearm is an included offense of second degree murder.  We agree. Our supreme court has endorsed the "charging instrument" approach for determining whether an offense is an included offense.  Under this approach, an offense can qualify as an included offense only if the instrument charging the greater offense sets out, at a minimum, the main outline of the included offense.  
People v. McLaurin
, 184 Ill. 2d 58, 104-05, 703 N.E.2d 11, 33 (1998).  

In the instant case, the State charged defendant with first degree murder, not second degree murder.  Thus, we must first decide which charging instrument to examine to determine whether aggravated battery with a firearm is an included offense of second degree murder.  The elements of second degree murder are the same as the elements for first degree murder, except that second degree murder also requires the existence of a mitigating factor.  
Jeffries
, 164 Ill. 2d at 122, 646 N.E.2d at 595.  Thus, an offense that is an included offense of first degree murder is necessarily an included offense of second degree murder and we may look to one of the two instruments charging defendant with first degree murder to make our determination.  Had defendant been convicted of first degree murder, only one conviction could stand and it would be for the most serious offense.  Where charges of both intentional and knowing murder have been proved, intentional murder is deemed the most serious offense.  
McLaurin
, 184 Ill. 2d at 104, 703 N.E.2d at 33.  Thus, defendant could have been convicted only of intentional murder.  Accordingly, we must look to the instrument charging defendant with intentional murder to determine whether aggravated battery with a firearm is an included offense.

The indictment for intentional murder charges that "defendant, without lawful justification and with the intent to kill Wile Trotter, shot Wile Trotter with a handgun, thereby causing the death of Wile Trotter."  The indictment for aggravated battery with a firearm charges that "defendant, in committing a battery, ***, knowingly and by means of discharging of a firearm, caused injury to Wile Trotter, in that said defendant shot Wile Trotter in the body with a handgun."  As charged, aggravated battery with a firearm is an included offense of first degree murder.  Thus, it is also an included offense of second degree murder.  Although the intentional murder charge alleges that defendant caused the death of Wile Trotter by shooting him with a handgun, and the offense of aggravated battery with a firearm requires injury to the victim (720 ILCS 5/12-4.2 (West 1998)), death by gunshot wound necessarily implies sufficient bodily injury to satisfy this element.  
People v. Hamilton
, 179 Ill. 2d 319, 325, 688 N.E.2d 1166, 1170 (1997) (it is not necessary for the charging instrument to expressly allege all the elements of the lesser offense).  Accordingly, either the second degree murder or aggravated battery with a firearm conviction must be vacated.

This case presents an unusual scenario because the included offense, aggravated battery with a firearm, is the more serious offense.  Second degree murder is a Class 1 felony with a sentencing range of 4 to 20 years (720 ILCS 5/9-2(d); 730 ILCS 5/5-

8-1(a)(1.5) (West 1998)), while aggravated battery with a firearm is a Class X felony with a sentencing range of 6 to 30 years (720 ILCS 5/12-4.2(b); 730 ILCS 5/5-8-1(a)(3) (West 1998)).  However, the trial judge sentenced defendant to only 20 years for second degree murder and 15 years for aggravated battery with a firearm.  Thus, we must determine whether we are required to vacate the less serious offense, 
i.e.
, second degree murder, or the included offense, 
i.e.
, aggravated battery with a firearm.  We recognize that, in most cases, the included offense will likely be the less serious offense, and the result will be the same in either case.  Here, however, because of the legislative classification of second degree murder as a less serious offense than aggravated battery with a firearm, the result will be different based upon our decision.  

Defendant argues that the long-standing rule is that only the conviction for the most serious offense can stand.  He contends that this court must vacate the second degree murder conviction and 20- year sentence.  The State argues that if any of the convictions or sentences are to be vacated, it should be the conviction and sentence for aggravated battery with a firearm.  It contends that, under 
People v. Olson
, 128 Ill. App. 3d 560, 563, 470 N.E.2d 1176, 1179 (1984),
 the rule providing that where multiple convictions arise from one physical act, only the conviction for the most serious offense can stand was designed to inure to the benefit of the State.  The State, it contends, is allowed to obtain the highest sentence possible regardless of whether the sentence is imposed for the lesser or the greater offense.  
Olson
, 128 Ill. App. 3d at 563, 470 N.E.2d at 1179.

Olson
 was the second appeal in that case.  In his first trial, Olson was convicted of attempted murder, for which he received a 27-year sentence, and armed violence (predicated upon attempted murder), for which he received a 10-year sentence.  In his first appeal, the appellate court remanded for a new trial.  Olson was again convicted of both crimes.  At a posttrial hearing, prior to sentencing, Olson moved to vacate his conviction and sentence for attempted murder, arguing that both convictions arose from one act.  The State moved to nol-pros the armed violence conviction.  The trial court granted the State's motion.  The trial court then again sentenced Olson to 27 years for attempted murder.  On his second appeal, Olson argued this procedure violated the rule that where multiple convictions are carved out of the same act, judgment and sentence should be entered only on the more serious offense.  The appellate court upheld the procedure as a proper exercise of the State's prosecutorial discretion.  Defendant argues that 
Olson
 is inapplicable because this case does not involve prosecutorial discretion.

Relatively few cases discuss situations involving multiple convictions carved out of multiple acts, where some offenses are included offenses.  
In the few cases discussing this scenario, the courts affirmed only the conviction and sentence for the greater offense and vacated the conviction and sentences for the included offense.  
People v. Smith
, 183 Ill. 2d 425, 432, 701 N.E.2d 1097, 1100 (1998) (court vacated armed robbery conviction and sentence because it was an included offense of felony murder predicated upon armed robbery); 
People v. Stanley
, 246 Ill. App. 3d 393, 403, 615 N.E.2d 1352, 1360 (1993) (the court vacated convic

tion and sentence for aggravated battery because it was an included offense of murder); 
People v. Moore
, 301 Ill. App. 3d 728, 733, 704 N.E.2d 80, 84 (1998) (court vacated aggravated battery conviction and sentence because it was an included offense of armed violence); 
People v. Rhoden
, 299 Ill. App. 3d 951, 963, 702 N.E.2d 209, 217 (1998) (court vacated attempt (armed robbery) conviction and sentence because it was an included offense of felony murder predicated on attempt (armed robbery)).  However, in all of these cases, the included offense was legislatively classified as less serious and was assigned a lower sentence by the trial court.  
Thus, these courts did not discuss the dilemma presented here where the greater offense is legislatively classified as a less serious offense, but has been assigned a greater sentence by the trial court.

We have considered the alternatives and conclude that where multiple convictions are based on multiple acts, and some offenses are included offenses, only the conviction and sentence for the offense with the highest sentence may stand.  In so holding, we agree with the principle espoused in 
Olson
, 128 Ill. App. 3d at 563, 470 N.E.2d at 1179, that the rule against multiple convictions should inure to the State and not provide a windfall for defendants, although we recognize 
Olson
 
involved different issues. 
 

In arguing that only the most serious offense may stand, defendant suggests that the "most serious" offense is that which is legislatively classified as the most serious.  However, we have found no binding precedent explicitly holding as such.  Regardless of the legislature's classification of offenses, the trial court still retains the discretion to assign any sentence to an offense, so long as the sentence is within the statutorily permitted range and it has considered factors in mitigation and aggravation.  The trial court, having observed the testimony of the witnesses and heard all of the evidence, is in the best position to determine the relative seriousness of the offenses committed and to assign sentences accordingly.  We choose to respect the trial court's decision and will uphold the conviction and sentence for the offense to which the trial court assigns the highest sentence.  

In most cases, this rule will likely result in vacation of the included offense and the offense legislatively classified as less serious because, in most cases, the included offense will be the less serious offense and will be assigned the lower sentence.  However, in peculiar situations such as the one presented today, this rule will prevent windfalls for defendants, whereas the other possible rules would leave open this possibility.  For example, if we were to hold that only the conviction and sentence for the offense legislatively classified as the most serious can stand, a defendant could receive a windfall where, as here, the trial court assigns a higher sentence to the offense given a less serious classification.  If we were to hold that the included offense must be vacated and only the greater offense can stand, a defendant might receive a windfall if the trial court assigns a higher sentence to the included offense.  This situation would have occurred here if the trial court had sentenced defendant to 30 years for aggravated battery with a firearm, which it was statuto

rily entitled to do, instead of 15 years. 

For the foregoing reasons, we vacate defendant's conviction and 15-year sentence for aggravated battery with a firearm and affirm his conviction and 20-year sentence for second degree murder.

III. CONCLUSION

Defendant's convictions and sentences for second degree murder (of Wile) and aggravated battery with a firearm (of Willis) are affirmed.  Defendant's conviction and 15-year sentence for aggravated battery with a firearm (of Wile) are vacated.

Affirmed in part and vacated in part.

STEIGMANN and McCULLOUGH, JJ., concur.