THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STACY R. DILLARD, Defendant-Appellant.

Fourth District    No. 4—99—0973

Opinion filed March 6, 2001.

Daniel D. Yuhas and John M. McCarthy, both of State Appellate Defender's Office, of Springfield, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and James C. Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In August 1999, a jury convicted defendant, Stacy R. Dillard, of aggravated battery in a place of public accommodation (720 ILCS 5/12—4(b)(8) (West 1998)). In November 1999, the trial court sentenced him to an extended term of nine years in prison, based on his prior convictions (730 ILCS 5/5—5—3.2(b)(1) (West 1998)).

Defendant appeals, arguing that (1) the State failed to prove beyond a reasonable doubt that he did not act in self-defense; and (2) the extended-term sentencing provision set forth in section 5—5—3.2(b)(1) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5—5—3.2(b)(1) (West 1998)) is unconstitutional pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 455, 120 S. Ct. 2348, 2362-63 (2000). We affirm.

## I. BACKGROUND

At defendant's trial, Thomas Blondell testified that around 10

p.m. on January 30, 1999, he went to the Big Foot gas station and convenience store in Urbana (hereinafter the store) to purchase gas. When Blondell went inside the store to pay, he noticed defendant engaged in a "heated exchange" with Tim McDaniel, who was standing in the food section with his nine-year-old son. McDaniel and his son, who appeared frightened, began walking toward Blondell. When Blondell heard defendant screaming at McDaniel, Blondell told defendant to calm down and leave the store if he could not behave properly. Defendant left the store, and Blondell told the store manager to call the police and lock the doors. After the store manager responded that he was speaking with the police, defendant came back in the store and hit Blondell, knocking his glasses off. Blondell grabbed defendant's shirt or arms and pushed him out of the store and onto the hood of a car parked in front of the store. Blondell held defendant down on the hood of the car for a short time and then told defendant that he was going to let him get up and "just go get out of here." After Blondell let go of defendant and turned to walk back inside the store, defendant hit him on the side of his face, causing profuse bleeding. Blondell then went back inside the store, where he and McDaniel tried to stop the bleeding.

Blondell denied grabbing defendant around the neck when he pushed him out of the store. He also denied hitting defendant during the incident.

McDaniel testified that on the evening of January 30, 1999, he and his son were standing inside the store when defendant, whom McDaniel did not know, approached them and "made small talk." After a few minutes, defendant asked McDaniel for a ride. McDaniel refused, and defendant became verbally abusive to both McDaniel and his son. McDaniel complained to one of the store's employees, and defendant yelled, "[W]hat's wrong with you, man, I didn't do anything to you." Defendant then approached McDaniel and his son and continued yelling at them. At that point, Blondell entered the store and told defendant to "back off." Defendant turned his attention toward Blondell, and defendant and Blondell began yelling at each other. After about 30 seconds of yelling, defendant knocked Blondell's glasses off his face.

At that point, Blondell grabbed defendant and pushed him out of the store and onto a nearby car. According to McDaniel, it "looked like [Blondell] was trying to talk [defendant] down" as he held him on the hood of the car. McDaniel also testified as follows regarding the incident: "Blondell got up and started heading back into the store, and—and then [defendant] came at him and I think just hit him from behind, like towards the face." Blondell then came back into the store, and McDaniel noticed that he was bleeding. After McDaniel helped

Blondell into the bathroom, defendant came back into the store and said to McDaniel, "[Y]ou want some of this, you want some of this." McDaniel also stated that he did not see Blondell hit defendant during the incident.

Sean Douglas Campbell testified that, on the evening of the incident, he entered the store to purchase milk. As he stood in the checkout line, he heard defendant yelling at customers and asking them if they wanted to fight. At one point during the incident, Blondell, who Campbell estimated was 6 feet tall and weighed 200 pounds, told defendant to leave the store. After defendant left the store and came back in, defendant "smacked [Blondell] in the face and knocked his glasses off." Blondell then grabbed defendant by his shirt and pushed him out of the store and onto the hood of Campbell's car. Campbell went outside and told them to get off his car. Blondell and defendant got off of the car, and Blondell turned to go back inside the store. Defendant, who had fallen to the ground, got up and "sucker punched" Blondell at least once and "tried to hit him at least two other times." Campbell also stated that he did not see Blondell hit defendant during the incident.

Urbana police officer Kary Keleher testified that, when he arrived on the scene, he saw defendant walking through the store's parking lot. Keleher stopped defendant and asked him if he had been inside the store. Defendant responded, "I didn't do shit, that guy just punched me in the eye." After speaking with a witness, Keleher directed two other officers to arrest defendant. Keleher also identified a photograph as depicting Blondell's bandaged face and bloody shirt on the night of the incident.

Defendant testified that, on the night of the incident, he went into the store to buy cigarettes. Defendant stated that he was talking to McDaniel when Blondell, who was taller than defendant, came in, stood over him, and pointed a finger in his face. Defendant tried to knock Blondell's hand away, and Blondell grabbed him around the neck, pushed him out of the store, "body slammed" him on top of a car, and hit his head against the hood of the car several times. Defendant initially denied making any physical contact with Blondell prior to being pushed out of the store. However, he later acknowledged that he might have accidentally knocked Blondell's glasses off of his face. Defendant also stated that (1) Blondell punched him "numerous times," (2) he was afraid of Blondell, and (3) he was trying to protect himself when he hit Blondell. The trial court permitted the State to impeach defendant with his prior convictions of possession of a controlled substance with intent to deliver and robbery.

On this evidence, the jury found defendant guilty of aggravated

battery in a place of public accommodation. The trial court later sentenced defendant as stated. This appeal followed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Defendant first argues that the State failed to prove beyond a reasonable doubt that he did not act in self-defense. Specifically, he contends that "looking at the evidence in the light most favorable to the prosecution, the only reasonable conclusion is that [Blondell] became the aggressor in this situation and [defendant's] actions were in self-defense." In support of his contention, defendant claims that (1) the size difference between defendant and Blondell, coupled with Blondell's "aggressive vigilante-like behavior," made defendant's "belief that he was in danger reasonable"; and (2) "the fact that Blondell turned around did not mean that the danger to [defendant] was over." We disagree.

Self-defense is an affirmative defense, and once a defendant raises it, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the elements of the charged offense. The elements of self-defense are that (1) unlawful force was threatened against a person, (2) the person threatened was not the aggressor, (3) the danger of harm was imminent, and (4) the use of force was necessary. *People v. White*, 293 Ill. App. 3d 335, 338, 687 N.E.2d 1179, 1181 (1997). If the State negates any one of these elements, the defendant's claim of self-defense must fail. *People v. Shields*, 298 Ill. App. 3d 943, 947, 700 N.E.2d 168, 172 (1998).

The right of self-defense does not justify a person in committing an act of retaliation or revenge (*People v. Woods*, 81 Ill. 2d 537, 543, 410 N.E.2d 866, 869 (1980)), nor does the right permit a person to pursue and inflict injury upon an initial aggressor after the aggressor abandons the altercation (see *People v. Belpedio*, 212 Ill. App. 3d 155, 161, 569 N.E.2d 1372, 1376 (1991)).

The jury, as the trier of fact, determines witnesses' credibility, draws reasonable inferences from testimony, and resolves conflicts in evidence. A jury may consider the probability or improbability of the defendant's account, the circumstances surrounding the crime, and the relevant testimony of other witnesses. *People v. De Oca*, 238 Ill. App. 3d 362, 367, 606 N.E.2d 332, 337 (1992). A jury therefore need not accept a defendant's claim of self-defense. *People v. Boyd*, 307 Ill. App. 3d 991, 995, 719 N.E.2d 306, 309 (1999). "The standard of review for this issue is whether, taking all of the evidence in the light most favorable to the State, any rational trier of fact could have found be-

yond a reasonable doubt that defendant did not act in self-defense."
*People v. Lee*, 311 Ill. App. 3d 363, 367, 724 N.E.2d 557, 561 (2000).

■ In this case, the only evidence suggesting that defendant acted in self-defense was (1) defendant's testimony that (a) he was afraid of Blondell and (b) he was protecting himself when he hit Blondell; and (2) Keleher's testimony that, on the night of the incident, defendant told Keleher that he had not done anything wrong. However, Blondell, McDaniel, and Douglas all testified that (1) defendant instigated the incident, (2) Blondell grabbed defendant and pushed him out of the store after defendant knocked Blondell's glasses off, and (3) defendant hit Blondell *after* Blondell had let go of defendant and turned to walk back into the store.

Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found beyond a reasonable doubt that (1) defendant instigated the incident when he knocked Blondell's glasses off; (2) when Blondell grabbed defendant and physically escorted him out of the store, he was attempting to diffuse the situation and subdue defendant; and (3) after Blondell released his grip on defendant and turned to walk back into the store, defendant did not reasonably believe he was in imminent danger and hit Blondell in retaliation. Even accepting defendant's contention that Blondell was the initial aggressor, we conclude that a rational trier of fact could have found beyond a reasonable doubt that defendant did not act in self-defense, but instead acted in retaliation after Blondell had abandoned the altercation.

B. Constitutionality of Section 5—5—3.2(b)(1) Under *Apprendi*

■ Last, defendant argues that the enhanced sentencing provision of section 5—5—3.2(b)(1) of the Unified Code is unconstitutional under *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. Specifically, defendant contends that section 5—5—3.2(b)(1) violates his right to due process and trial by jury because the statute does not require the State to (1) give notice of its intent to sentence him to an extended term based on his prior convictions and (2) prove to a jury his prior convictions beyond a reasonable doubt. Defendant thus claims that his extended-term sentence should be vacated and the cause remanded for resentencing. We disagree.

Section 5—5—3.2(b)(1) of the Unified Code provides as follows:

"(b) The following factors may be considered by the court as reasons to impose an extended[-]term sentence under [s]ection 5—8—2 upon any offender:

(1) When a defendant is convicted of any felony, after having been previously convicted in Illinois or any other jurisdiction of the same or similar class of felony or greater class felony, when

such conviction has occurred within 10 years after the previous conviction, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts." 730 ILCS 5/5—5—3.2(b)(1) (West 1998).

Thus, pursuant to section 5—5—3.2(b)(1), a trial court may impose a greater sentence on a defendant who has prior convictions that satisfy the statutory criteria. 730 ILCS 5/5—5—3.2(b)(1) (West 1998); *People v. Pollard*, 225 Ill. App. 3d 970, 979, 589 N.E.2d 175, 181 (1992).

Section 5—5—3.2(b) of the Unified Code, the extended-term statute, does not require the State to give a defendant notice if it intends to request that the trial court sentence the defendant to an extended term. *People v. Adams*, 91 Ill. App. 3d 1059, 1065, 415 N.E.2d 610, 615 (1980). The statute also does not require that a jury find that a defendant's prior convictions have been proved beyond a reasonable doubt before the court may impose an extended sentence. See *People v. Grier*, 90 Ill. App. 3d 840, 855, 413 N.E.2d 1316, 1327-28 (1980) (to impose an extended sentence, it is not necessary that a prior conviction within the same class or greater class felony be alleged in the charging instrument or proved as an element of the offense charged).

In *Apprendi*, the United States Supreme Court quoted its analysis in *Jones v. United States*, 526 U.S. 227, 243 n.6, 143 L. Ed. 2d 311, 326 n.6, 119 S. Ct. 1215, 1224 n.6 (1999), that " 'under the [d]ue [p]rocess [c]lause of the [f]ifth [a]mendment and the notice and jury trial guarantees of the [s]ixth [a]mendment, any fact (*other than prior conviction*) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.' " (Emphasis added.) *Apprendi*, 530 U.S. at 476, 147 L. Ed. 2d at 446, 120 S. Ct. at 2355. The *Apprendi* Court cited its reasoning from *Jones*, which quoted another Supreme Court decision, *Almendarez-Torres v. United States*, 523 U.S. 224, 140 L. Ed. 2d 350, 118 S. Ct. 1219 (1998):

"[A]s *Jones* made crystal clear, 526 U.S. at 248-249, [143 L. Ed. 2d at 329-30, 119 S. Ct. at 1226-27,] our conclusion in *Almendarez-Torres* turned heavily upon the fact that the additional sentence to which the defendant was subject was 'the prior commission of a serious crime.' [*Almendarez-Torres*,] 523 U.S. at 230[, 140 L. Ed. 2d at 359, 118 S. Ct. at 1224); see also *id.*, at 243[, 140 L. Ed. 2d at 368, 118 S. Ct. at 1230-31] (explaining that 'recidivism ... is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence'); *id.*, at 244[, 140 L. Ed. 2d at 369, 118 S. Ct. at 1231] (emphasizing 'the fact that recidivism "does not relate to the commission of the offense ..." '); *Jones*, 526 U.S. at 249-250, n.10[, 143 L. Ed. 2d at 330 n.10, 119 S. Ct. at 1227 n.10] ('The majority and the dissenters in *Almendarez-Torres* dis-

agreed over the legitimacy of the Court's decision to restrict its holding to recidivism, but both sides agreed that the Court had done just that')." *Apprendi*, 530 U.S. at 488, 147 L. Ed. 2d at 454, 120 S. Ct. at 2361-62.

Defendant concedes that the *Apprendi* Court explicitly recognized that prior convictions constitute an exception to the general rule that facts which increase a sentence beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Nonetheless, he contends that, because the *Apprendi* Court called into question whether *Almendarez-Torres* was correctly decided, we should (1) conclude that *Apprendi* requires prior convictions to be charged, submitted to a jury, and proved beyond a reasonable doubt; and (2) hold that section 5—5—3.2(b)(1) of the Unified Code violates a defendant's right to trial by jury and due process. We disagree.

Although the *Apprendi* Court stated that "it is arguable that *Almendarez-Torres* was incorrectly decided," the Court was clear that it was not overruling its prior decision. *Apprendi*, 530 U.S. at 489, 147 L. Ed. 2d at 454, 120 S. Ct. at 2362. We agree with the court in *People v. Roberts*, 318 Ill. App. 3d 719, 728-29 (2000), which found the following language from a case in the District Court for the Eastern District of Pennsylvania to be on point:

" '[D]espite the [*Apprendi*] Court's reservations about its continuing validity, the [*Apprendi*] Court chose not to overrule *Almendarez-Torres*. "Needless to say, only [the Supreme Court] may overrule one of its precedents. Until that occurs [*Almendarez-Torres*] is the law." *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 103 S. Ct. 1343, 75 L. Ed. 2d 260 (1983) (per curiam); *see also Hutto v. Davis*, 454 U.S. 370, 102 S. Ct. 703, 70 L. Ed. 2d 556 (1982) (per curiam) ("But unless we wish anarchy to prevail within the federal judicial system, a precedent of this court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be."). Since *Almendarez-Torres* was plainly addressed, but not overruled by the Supreme Court in *Apprendi*, the court is obligated to apply it in this case.' *United States v. Powell*, 109 F. Supp. 2d 381, 383 (E.D. Pa. 2000)."

Because *Almendarez-Torres* is still good law, we reject defendant's assertion that *Apprendi* renders unconstitutional section 5—5—3.2(b)(1) of the Unified Code, which provides for sentencing enhancement based on prior convictions.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

MYERSCOUGH and KNECHT, JJ., concur.