THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. IVORY LEE, Defendant-Appellant.

Fourth District   No. 4—98—0413

Opinion filed October 3, 2003.

432

Daniel D. Yuhas and Martin J. Ryan, both of State Appellate Defender's Office, of Springfield, for appellant.

John P. Schmidt, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In February 1998, a jury convicted defendant, Ivory Lee, of (1) the second degree murder of Wile Trotter (720 ILCS 5/9—2 (West 1998)); (2) aggravated battery with a firearm for shooting Wile (720 ILCS 5/12—4.2 (West 1998)); and (3) aggravated battery with a firearm for shooting Willis Trotter. In May 1998, the trial court sentenced him to 20 years in prison for second degree murder and 15 years in prison for aggravated battery with a firearm of Wile, with those sentences to run concurrently. The court also sentenced defendant to 18 years in prison for aggravated battery with a firearm of Willis, with that sentence to be served consecutively to the other sentences.

Defendant appealed, arguing that (1) the State failed to prove beyond a reasonable doubt that he did not shoot the Trotters in self-defense; and (2) his convictions for the second degree murder and aggravated battery with a firearm of Wile were carved out of the same physical act. This court affirmed in part and vacated in part. *People v. Lee*, 311 Ill. App. 3d 363, 724 N.E.2d 557 (2000). Defendant filed a petition for leave to appeal, which the supreme court denied. However, in the exercise of its supervisory authority, that court vacated this court's judgment and directed us to reconsider our decision in light of *People v. Crespo*, 203 Ill. 2d 335, 788 N.E.2d 1117 (2001). We recognize that the supreme court in *Crespo* issued a supplemental opinion upon denial of rehearing; however, the supplemental opinion addressed only a claim under *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). See *Crespo*, 203 Ill. 2d at 346, 788 N.E.2d at 1123.

In accordance with the supreme court's direction, we have reconsidered our decision. We adhere to our earlier decision affirming in part and vacating in part.

## I. BACKGROUND

In March 1997, the State charged defendant with (1) three counts

of first degree murder of Wile: (a) intentional murder (720 ILCS 5/9—1(a)(1) (West 1998)), (b) knowing murder (720 ILCS 5/9—1(a)(2) (West 1998)), and (c) felony murder (720 ILCS 5/9—1(a)(3) (West 1998)); (2) one count of aggravated battery with a firearm of Wile; (3) one count of aggravated battery with a firearm of Willis; and (4) one count of unlawful use of a weapon by a felon (720 ILCS 5/24—1.1 (West 1998)). The State later dismissed the counts of felony murder and unlawful use of a weapon by a felon.

The evidence at defendant's February 1998 jury trial showed the following. On the evening of February 6, 1997, defendant went to Kelu Anderson's residence, where he met his friends, Richard Hatchett, Lester Davis, Travis McCullough, Demetrius McCullough, and Chris Tapley. Later that evening, defendant and his friends decided to go to a party at the Sky Harbor Inn in Springfield. They brought a handgun with them for protection but initially left it in Davis's car.

About an hour after defendant and his friends arrived at the party, twin brothers Wile and Willis, who were allegedly known for carrying guns, arrived at the party. Ten minutes later, defendant, Davis, and Hatchett went to their cars to get some drinks. Defendant took the handgun from Davis's car and tucked it in his waistband. They then returned to the party.

About 15 minutes later, defendant and his friends decided to leave. When defendant went outside, he saw Wile talking to Travis and Willis standing nearby. Willis then walked over, stood by Wile, and began arguing with Hatchett about an incident that had occurred a few months earlier. (During the prior incident, Willis apparently had interceded in an argument between Hatchett and another person, which then resulted in a fight between Hatchett and Willis and Hatchett's arrest.) Hatchett told Willis that he should have minded his own business during the prior incident, and Hatchett and Willis yelled at each other and exchanged profanities. According to Demetrius, Davis, and defendant (who claimed that he acted in self-defense), Willis appeared to reach for a gun inside his pocket during the argument. Believing that Willis was going to shoot, defendant pulled out his handgun and shot Willis once in the stomach. Then, believing that Wile also was reaching for a gun in his coat, defendant shot Wile three times, in the chest, upper thigh, and lower leg. Defendant and his friends then fled the scene.

Police arrived at the scene a few minutes after the shootings. Willis and Wile lay approximately 75 to 100 feet apart. Wile was conscious and told Springfield police officer Paul Earley that Davis and Travis had shot him. Willis was also conscious but refused to talk to the police. Officers did not find any weapons on Wile or Willis. About 30 to

45 minutes later, once the area was secured and Wile and Willis had been taken to the hospital, officers searched the area for weapons but found none. On February 7, 1997, Wile died as a result of the bullet wound in his chest, which had caused massive hemorrhaging from his liver and aorta.

Shortly after the shootings, Springfield police officer Steven Bennett began looking for Travis and Davis. While patrolling in his squad car, Bennett saw an Oldsmobile Cutlass, shined his spotlight inside, and recognized the driver as Hatchett, whom Bennett knew to be friends with Travis. Bennett pulled over the Cutlass and saw a passenger (later identified as defendant) run from the car toward some nearby houses. Bennett frisked Hatchett and the remaining passengers, Davis, Travis, and Demetrius, but did not find any weapons. Bennett then took them to the police station for questioning.

Police arrested defendant on March 18, 1997. Defendant initially claimed he was inside the Sky Harbor Inn at the time of the shooting. However, when detectives told him that other witnesses had contradicted his claim, he gave a written statement the next day in which he admitted shooting Wile and Willis in self-defense.

Based on this evidence, the jury convicted defendant of second degree murder of Wile, aggravated battery with a firearm of Wile, and aggravated battery with a firearm of Willis. In May 1998, the trial court sentenced defendant as earlier stated.

This appeal followed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Defendant first argues that the State failed to prove beyond a reasonable doubt that he did not act in self-defense in shooting Wile and Willis. In support of this argument, he cites the following: (1) defendant's testimony that (a) Wile and Willis were known to carry guns and people were frightened of them; (b) on one occasion after Willis's fight with Hatchett the previous Christmas, the Trotters saw Hatchett, Davis, Travis, Demetrius, and defendant at a friend's house and shot at them; (c) on another occasion, defendant and Davis were at Anderson's residence when the Trotters rode down the street and pointed their guns at them but did not shoot; and (d) in January 1998, Willis allegedly shot at Germaine Brown, a person unrelated to this case, on two occasions; (2) the testimony that Willis appeared to be reaching for a gun in his pocket was uncontradicted except by Willis himself; and (3) Willis's testimony that he was not reaching for a gun and that he never carried a gun prior to defendant's shooting him at Sky Harbor Inn was not credible because (a) his testimony was

contradicted by other witnesses, and (b) he had a history of committing violent offenses against defendant and defendant's friends. Defendant also suggests that (1) police officers did not find any weapons at the scene because the Trotters could have disposed of their guns between the shooting and the officers' arrival; and (2) Willis's gun was likely in a jacket that Willis was wearing when he was shot, but which disappeared prior to his arrival at the hospital following the shooting. We disagree.

■ Self-defense is an affirmative defense, and once a defendant raises it, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the elements of the charged offense. The elements of self-defense are (1) that unlawful force was threatened against a person; (2) that the person threatened was not the aggressor; (3) that the danger of harm was imminent; (4) that the use of force was necessary; (5) that the person threatened actually and subjectively believed a danger existed that required the use of the force applied; and (6) the beliefs of the person threatened were objectively reasonable. *People v. Jeffries*, 164 Ill. 2d 104, 127-28, 646 N.E.2d 587, 597-98 (1995). If the State negates any one of these elements, the defendant's claim of self-defense must fail. *People v. Grayson*, 321 Ill. App. 3d 397, 402, 747 N.E.2d 460, 465 (2001).

■ The jury, as the trier of fact, determines witness credibility, draws reasonable inferences from testimony, and resolves conflicts in evidence. A jury may consider the probability or improbability of the defendant's account, the circumstances surrounding the crime, and the relevant testimony of other witnesses. *People v. Dillard*, 319 Ill. App. 3d 102, 106, 745 N.E.2d 185, 189 (2001). A jury therefore need not accept a defendant's claim of self-defense. *People v. Boyd*, 307 Ill. App. 3d 991, 995, 719 N.E.2d 306, 309 (1999). "The standard of review for this issue is whether, taking all of the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that the defendant did not act in self-defense." *People v. Young*, 323 Ill. App. 3d 1078, 1089, 753 N.E.2d 1046, 1056 (2001).

■ Based upon our review of the record, we conclude that the State proved beyond a reasonable doubt that defendant's belief that deadly force was necessary was unreasonable, thus negating defendant's self-defense claim. The evidence showed that (1) the Trotters did not make threats to anyone on the night of the shootings; (2) no witness observed either of the Trotters with a gun that night; and (3) the police did not recover a gun from either Willis or Wile or from the scene after the shootings. Although defendant, Demetrius, and Davis

contradicted Willis's testimony that he did not make any threatening gestures or carry a gun prior to the Sky Harbor Inn incident, the jury was entitled to disbelieve those witnesses and find Willis's testimony more credible. See *Dillard*, 319 Ill. App. 3d at 106, 745 N.E.2d at 189. In that regard, we note that defendant's behavior in running from the police and initially claiming that he was inside the Sky Harbor Inn at the time of the shooting diminished his credibility. Further, the State impeached the testimony of Demetrius and Davis with their prior statements as to the Trotters' allegedly threatening gestures, as well as to other facts.

Moreover, the Trotters' alleged shooting and pointing of guns at defendant and defendant's friends on prior occasions were never reported to the police, and the jury was entitled to question whether the events ever took place. Although Willis's shooting of Brown was reported, the incident took place after the shooting at the Sky Harbor Inn and thus was of little relevance to the reasonableness of defendant's belief that deadly force was necessary on the night of the shootings. Even if the Trotters behaved violently in the past, defendant presented little evidence, circumstantial or otherwise, that the Trotters threatened similar violence at the Sky Harbor Inn. Defendant's claim that the Trotters had guns that night but disposed of them before the police could discover them is mere speculation and was not supported by any evidence.

Thus, reviewing the record before us in accordance with the appropriate standard, we conclude that any rational trier of fact could have found beyond a reasonable doubt that defendant's belief that deadly force was necessary against the Trotters was unreasonable. Accordingly, we further conclude that the State proved beyond a reasonable doubt that defendant did not act in self-defense.

### B. One-Act, One-Crime Doctrine

Last, defendant argues that his convictions for the second degree murder and aggravated battery with a firearm of Wile were carved out of the same physical act.

### 1. *Forfeiture*

■ Initially, we recognize defendant's concession that he did not properly preserve this issue for appeal. However, we agree with defendant that we may address the argument under the plain error doctrine because his convictions and sentences affect his substantial rights. *People v. Smith*, 183 Ill. 2d 425, 430, 701 N.E.2d 1097, 1099 (1998).

### 2. *The Crespo Decision and Its Application in This Case*

In *Crespo*, 203 Ill. 2d at 340, 788 N.E.2d at 1120, the supreme

court considered whether multiple convictions could be premised on the same act. In that case, the defendant stabbed one of the victims three times in rapid succession. *Crespo*, 203 Ill. 2d at 338, 788 N.E.2d at 1119. With respect to that stabbing, the State charged the defendant with (1) one count of attempt (first degree murder) (720 ILCS 5/8—4, 9—1 (West 1998)); (2) two counts of aggravated battery (one count based on battery with a deadly weapon (720 ILCS 5/12—4(b)(1) (West 1998)) and the other count based on great bodily harm (720 ILCS 5/12—4(a) (West 1998))); and (3) one count of armed violence (720 ILCS 5/33A—2 (West 1998)). The armed violence charge was predicated on the great bodily harm aggravated battery charge. Following his trial, a jury convicted the defendant of aggravated battery based on great bodily harm, aggravated battery based on the use of a deadly weapon, and armed violence. The trial court sentenced the defendant on only one aggravated battery conviction, finding that the two aggravated batteries merged. *Crespo*, 203 Ill. 2d at 337, 788 N.E.2d at 1118.

On appeal, the defendant in *Crespo* argued that his aggravated battery conviction should be vacated because it was based on the same physical act (the three stabs) as his armed violence conviction. The appellate court rejected defendant's argument, but the supreme court granted his petition for leave to appeal. *Crespo*, 203 Ill. 2d at 337, 788 N.E.2d at 1118.

■ The supreme court first acknowledged the "seminal case in this area," *People v. King*, 66 Ill. 2d 551, 363 N.E.2d 838 (1977), in which the court explained as follows:

" 'Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts. "Act," when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense. We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered.' " *Crespo*, 203 Ill. 2d at 340-41, 788 N.E.2d at 1120, quoting *King*, 66 Ill. 2d at 566, 363 N.E.2d at 844-45.

The supreme court went on to discuss its holding in *People v. Dixon*, 91 Ill. 2d 346, 355-56, 438 N.E.2d 180, 185 (1982), in which the court applied *King* and rejected the defendant's argument that strik-

ing the victim several times with a club constituted a continuous beating and thus a single act. Instead, the *Dixon* court concluded that the separate blows, although closely related, constituted separate acts that could properly support multiple convictions with concurrent sentences. *Dixon*, 91 Ill. 2d at 356, 438 N.E.2d at 185.

The *Crespo* court then noted that, consistent with *Dixon*, each stab wound could have supported a separate conviction, and the State "*could have* argued the case to the jury that way." (Emphasis in original.) *Crespo*, 203 Ill. 2d at 344, 788 N.E.2d at 1122. The State, however, portrayed the stab wounds to the jury as a single attack, and the State never argued to the jury that each stab wound alone would be sufficient to sustain the charge against the defendant. *Crespo*, 203 Ill. 2d at 344, 788 N.E.2d at 1122. In addition, the counts charging the defendant with armed violence and aggravated battery did not differentiate between the separate stab wounds. Instead, the State charged the defendant with the same conduct (stabbing with a knife) under different theories of criminal culpability. *Crespo*, 203 Ill. 2d at 344, 788 N.E.2d at 1122. Under those circumstances, the supreme court concluded that to apportion the crimes among the various stabs for the first time on appeal would be "profoundly unfair." *Crespo*, 203 Ill. 2d at 343, 788 N.E.2d at 1122.

In this case, defendant also committed a series of closely related but separate acts when he shot Wile three times. And, as in *Crespo*, the State did not apportion those gunshots in its charging instrument so that each formed the basis for separate crimes. Instead, the charging instrument relied on the fact that defendant shot Wile with a handgun—without separation of the shots fired—to support the charges of both first degree murder and aggravated battery with a firearm of Wile. In addition, at trial, the State made no attempt to apportion those crimes among the three gunshots. In particular, the State never argued that (1) the gunshot to Wile's chest would be sufficient to sustain a conviction of first degree murder; and (2) the gunshots to Wile's thigh and leg would be sufficient to sustain a conviction of aggravated battery with a firearm. Because the State failed to apportion those crimes among the three gunshots, it cannot do so now on appeal. See *Crespo*, 203 Ill. 2d at 345, 788 N.E.2d at 1123. Accordingly, either defendant's second degree murder conviction or aggravated battery with a firearm conviction must be vacated.

### 3. *Vacation of Defendant's Aggravated Battery Conviction*

Defendant points out that the long-standing rule is that only the conviction for the more serious offense can stand. See *People v. Garcia*, 179 Ill. 2d 55, 71, 688 N.E.2d 57, 64 (1997) (when multiple

convictions are obtained for offenses arising from a single act, a sentence should be imposed on the more serious offense, and the conviction on the less serious offense should be vacated). He thus contends that this court must vacate his second degree murder conviction and the attendant 20-year sentence. The State responds that if any of the convictions or sentences are to be vacated, it should be the conviction and sentence for aggravated battery with a firearm. Specifically, the State contends that under *People v. Olson*, 128 Ill. App. 3d 560, 563, 470 N.E.2d 1176, 1179 (1984), the rule that where multiple convictions arise from one physical act only the conviction for the most serious offense can stand was designed to inure to the State's benefit. The State thus asserts that it should be allowed to obtain the highest sentence possible regardless of whether the sentence is imposed for the less serious or more serious offense. *Olson*, 128 Ill. App. 3d at 563, 470 N.E.2d at 1179. We agree with the State.

■ This case presents an unusual scenario because the trial court imposed a lesser sentence on the more serious offense of aggravated battery with a firearm. Aggravated battery with a firearm is a Class X felony with a sentencing range of 6 to 30 years (720 ILCS 5/12—4.2(b) (West 1998); 730 ILCS 5/5—8—1(a)(3) (West 1998)), and second degree murder is a Class 1 felony with a sentencing range of 4 to 20 years (720 ILCS 5/9—2(d) (West 1998); 730 ILCS 5/5—8—1(a)(1.5) (West 1998)). However, the court sentenced defendant to only 15 years for aggravated battery with a firearm and 20 years for second degree murder. Thus, we must determine whether we are required to vacate the legislatively classified less serious offense (second degree murder), to which the trial court assigned a greater sentence, or the legislatively classified more serious offense (aggravated battery with a firearm), to which the trial court assigned a lesser sentence.

*Olson* involved the second appeal in that case. In his first trial, the defendant was convicted of attempt (murder), for which he received a 27-year sentence, and armed violence (predicated upon attempt (murder)), for which he received a 10-year sentence. In the defendant's first appeal, the appellate court remanded for a new trial. Following his second trial, the defendant was again convicted of both crimes. At a posttrial hearing, prior to sentencing, the defendant moved to vacate his conviction and sentence for attempt (murder), arguing that both convictions arose from one act. In response, the State moved to nol-pros the armed violence conviction, and the trial court granted the State's motion. The court then sentenced the defendant to 27 years for attempt (murder). On his second appeal, the defendant argued that the trial court's procedure violated the rule that where multiple convictions are carved out of the same act, judgment and sentence

should be entered only on the more serious offense. *Olson*, 128 Ill. App. 3d at 561, 470 N.E.2d at 1177-78. The appellate court upheld the procedure as a proper exercise of the State's prosecutorial discretion. *Olson*, 128 Ill. App. 3d at 562-63, 470 N.E.2d at 1178-79. In so holding, the court reasoned that (1) the rule against multiple convictions should inure to the State's benefit, not the defendant's; and (2) the State should be allowed to obtain the highest sentence possible, regardless of whether that sentence was imposed for the greater or lesser offense. *Olson*, 128 Ill. App. 3d at 563, 470 N.E.2d at 1179.

We have considered the alternatives and conclude that where multiple convictions cannot stand under the one-act, one-crime doctrine, only the conviction and sentence for the offense with the highest sentence may stand. In so holding, we agree with the principle espoused in *Olson*, 128 Ill. App. 3d at 563, 470 N.E.2d at 1179, that the rule against multiple convictions should inure to the State's benefit and not defendant's.

In arguing that only the most serious offense may stand, defendant suggests that the "most serious" offense is that which is legislatively classified as the most serious. However, defendant does not cite (nor have we have found) any binding precedent explicitly holding as such. Regardless of the legislature's classification of offenses, the trial court still retains the discretion to assign any sentence to an offense, so long as (1) the sentence is within the statutorily permitted range, and (2) the court has considered factors in mitigation and aggravation. The trial court, having observed the testimony of the witnesses and heard all of the evidence, is in the best position to determine the relative seriousness of the offenses committed and assign sentences accordingly. We choose to respect the trial court's decision and will uphold the conviction and sentence for the offense to which the trial court assigns the highest sentence.

In most cases, this rule will result in vacation of the offense that the legislature deemed less serious because the trial court's assessment of the seriousness of an offense will ordinarily coalesce with the legislature's. However, in peculiar situations, such as the one in this case, the rule will prevent windfalls for defendants. If we were to hold that only the conviction and sentence for the offense legislatively classified as the more serious can stand, a defendant could receive a windfall when—as here—the trial court, in its discretion, assigns a higher sentence to the offense given a less serious classification.

Accordingly, we vacate defendant's conviction and 15-year sentence for aggravated battery with a firearm and affirm his conviction and 20-year sentence for second degree murder.

## III. CONCLUSION

For the reasons stated, we affirm defendant's convictions and sentences for second degree murder of Wile and aggravated battery with a firearm of Willis, and we vacate defendant's conviction and 15-year sentence for aggravated battery with a firearm of Wile.

Affirmed in part and vacated in part.

TURNER and McCULLOUGH, JJ., concur.