**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230096-U

Order filed May 20, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0096 Circuit No. 21-CF-1263 |
| | ) | |
| DANIEL A. ZITO, | ) ) | Honorable Michael W. Reidy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HETTEL delivered the judgment of the court.
Justices Brennan and Davenport concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The State presented sufficient evidence to convict defendant of aggravated battery.

¶ 2    Defendant, Daniel A. Zito, appeals his conviction for aggravated battery, arguing the State failed to present sufficient evidence to overcome his claim of self-defense. We affirm.

¶ 3                    I. BACKGROUND

¶ 4        Defendant was charged with two counts of aggravated battery (720 ILCS 5/12-3.05(c) (West 2020)), two counts of battery (*id.* § 12-3(a)(1), (2)), and one count of assault (*id.* § 12-1(a)) stemming from an altercation on July 18, 2021. The State alleged that defendant made physical contact of an insulting or provoking nature and caused injury to William Rivera in a public place. The State further alleged that defendant caused Monica Maestre to believe she would be battered by defendant. The case proceeded to a bench trial on July 6, 2022.

¶ 5        At trial, the following evidence was adduced: Maria Padilla was driving at approximately 9 p.m. with her daughter, Maestre, and Maestre's boyfriend, Rivera. Maestre was in the front passenger seat and Rivera was in the backseat, behind Padilla. At the same time, defendant and his fiancée, Lindsay Sebion, were in another car with Sebion driving. The two cars were stopped at a red light in the same lane with Padilla's car in front and Sebion's car behind. At that time, defendant exited Sebion's car and approached Padilla's car yelling obscenities. A physical altercation between defendant and Rivera ensued, the details of which were described differently by each witness. The altercation was observed by another motorist, Shawn Brabec.

¶ 6        Brabec testified that he was stopped at an intersection. When the light turned green, the cars in front of him did not move. Brabec discovered two cars were stopped in front of the light, one in front of the other. Brabec observed a man exit the rear car and approach the front car. The man appeared to be "upset, maybe a little angry." Brabec was initially three or four car lengths behind when the altercation began but was able to see over the other cars because he drove a large truck. He then repositioned his vehicle to the right of the two cars, roughly between them. The male who had exited the car started walking back toward his own car, but an individual from the other car "said some stuff that he just didn't like" and the man turned around. The man then

2

"dragged" a man from the other car, and Brabec saw the men fighting. Brabec believed the man who exited the rear car threw the first punch, but he did not identify either man.

¶ 7    Padilla testified that she was driving Maestre and Rivera home. Their car had stopped at a red light when she heard someone yelling behind her. Defendant approached Maestre's window and yelled profanities, accusing Maestre of flipping him off and calling her a "[b]itch." To Padilla's knowledge, nobody had flipped defendant off. From the backseat, Rivera said to the defendant, "[D]on't be calling my girlfriend a bitch." Defendant then went around the back of the car and started arguing with Rivera. Defendant reached into the car and was pulling on Rivera's shirt. Rivera opened the door and exited the car. Once Rivera was out of the car, defendant struck him with a closed fist, and they began wrestling on the ground. On cross-examination, Padilla admitted that she was not able to tell where defendant struck Rivera with his fist, nor whether he actually hit him, although on redirect examination she testified once again that it was defendant who struck Rivera first.

¶ 8    Rivera testified that he was in the backseat behind Padilla when defendant walked up to the car from behind, screaming, "Keep your finger in the fucking car, you dumb [b]itch. Stop sticking your fucking middle finger out." Defendant walked up to the passenger side window, made a "snarky" comment, then began to walk away. Rivera exited the car to make sure that "everybody was safe and [defendant] didn't get close to the car again." Rivera did not say anything to defendant, but believed defendant was intimidated by the fact that he had exited the car. When defendant noticed Rivera outside of the car, defendant walked up to him, said, "What the fuck you going to do about it," and then punched Rivera in the face. Defendant and Rivera began wrestling in front of Padilla's car. Defendant ripped Rivera's shirt, got on top of him and started punching him. Maestre then exited the car and pulled defendant off Rivera. After the

3

altercation, Rivera's face had scratches, and he had two bruises on his forehead. When asked by defense counsel why he felt the need to exit the car after defendant had started walking away, Rivera stated that defendant "also had a beer bottle in his hand," a fact which Rivera admitted he had not told the police or anyone else prior to his testimony.

¶ 9    Maestre's testimony was largely consistent with Rivera's. She testified that defendant walked up to the car and said, "So you want to flip me off, Bitch." As defendant was walking away, Rivera exited the car and defendant returned saying, "Get back in the fucking car." Defendant then punched Rivera in the forehead, and the two of them fell to the ground. The defense questioned Maestre's ability to observe the fight, given that the car was lower than Rivera's head and Maestre was seated in the car when the fight began. However, Maestre maintained that she was able to see everything through the car's window and only lost sight of what was happening once the two men were on the ground.

¶ 10    Sebion testified that she and defendant lived together and were engaged to be married. Just before the altercation, Sebion and defendant were arguing. As Sebion was attempting to change lanes, a car behind her also attempted to change lanes, and Sebion was forced to swerve back into her lane. As the other car passed Sebion's car, she heard something hit her car. Sebion then changed lanes and continued traveling until she was stopped at a stoplight. She noticed the car that had passed them was directly in front of her car at the stoplight.

¶ 11    Once stopped, defendant exited Sebion's car, walked up to the passenger side of the other car, and started yelling at the occupants, asking them "what the fuck is your problem" and calling the passenger a "bitch." Defendant remained for approximately 20 seconds, then started walking back toward Sebion. When he was halfway between the cars, a man exited the other car and started shouting and walking toward defendant. Sebion testified that defendant "turned around

4

and walked back towards the other vehicle" and yelled at the man to "[g]et back in your fucking car." Once the two men were less than a foot apart, the other man pushed defendant with both hands. Defendant pushed back and the other man punched defendant in the face. Defendant fell to the ground, and they continued fighting.

¶ 12 Defendant testified that at the time of the incident he was on parole. Just prior to the altercation, he was on the phone with his parole officer because he and Sebion were arriving home later than originally planned. When Sebion swerved back into her lane, defendant stated he saw "something fly at the car[,]" but he did not know who threw it or whether it actually hit the car.

¶ 13 When Sebion stopped at the red light behind the other car, defendant was "very upset," and approached the passenger side of the other car using "a lot of profanity" and "yelling loudly." The person in the passenger seat "flicked [him] off," and he yelled at her for approximately 10 seconds before returning to Sebion's car. Defendant had almost reached the passenger door of Sebion's car when a man exited from the other car and started yelling at defendant. Defendant did not recall precisely what the man said, but "[t]here was a lot of swearing and something about his girlfriend." The defendant and the man started walking toward each other, and the other man "either threw a punch or pushed [defendant] first." Defendant pushed him back, and the man punched defendant in the face, knocking him out. When defendant awoke, they wrestled on the ground until someone struck defendant on the side of his head. Defendant punched the man two more times in the forehead, then someone pulled defendant off the man.

¶ 14 Defendant was questioned by police about the incident, first at his home and later in a recorded interview, and repeatedly denied any involvement. He denied exiting his car, striking

5

anyone, or knowing why anyone would say he was involved in a fight. Defendant testified at trial that he lied to the police because he believed at the time that any altercation, even one in which he engaged in self-defense, would result in him going back to prison because he was on parole. However, after the interview ended, he told a different officer that "no matter how it turned out[,] that this was self-defense."

¶ 15        The court found defendant guilty of aggravated battery and battery of Rivera but found defendant not guilty of assaulting Maestre. In pronouncing its ruling, the court reviewed the evidence in detail, noting that "in combat type situations, there [are] a lot of discrepancies that take place." The court specifically found Brabec's testimony credible and Sebion and defendant's testimony not credible, and that, based on the collective testimony of the witnesses, defendant struck Rivera without legal justification. The court further found that defendant was the initial aggressor, negating defendant's claim of self-defense.

¶ 16        The four counts stemming from the battery of Rivera merged, and defendant was sentenced to two years' imprisonment on the most serious count, aggravated battery on a public way. Defendant filed a timely motion to reconsider, which was denied. Defendant appealed.

¶ 17                                II. ANALYSIS

¶ 18        On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt where he presented sufficient evidence of self-defense. Specifically, defendant contends that the circuit court erred when it "placed far too much credence in witnesses who were either confused and mistaken about what they had witnessed or had a motive to be untruthful."

¶ 19        When a reviewing court assesses the sufficiency of the State's evidence, we determine " ' whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational

6

trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Our role is not to retry the defendant. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). We afford great deference to the trier of fact, "to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). Indeed, we will not "substitute [our] judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of witnesses." *People v. Jackson*, 2020 IL 124112, ¶ 64. A court's judgment will not be reversed "unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt." *People v. Newton*, 2018 IL 122958, ¶ 24.

¶ 20    To prove the charge of aggravated battery on a public way, the State was required to prove that defendant made physical contact that caused bodily harm to Rivera on or about public property without legal justification. See 720 ILCS 5/12-3.05(c) (West 2020). Defendant concedes that he made physical contact with Rivera but contends the evidence was insufficient to prove he acted without legal justification because he acted in self-defense.

¶ 21    The elements of self-defense are that "(1) unlawful force was threatened against a person, (2) the person threatened was not the aggressor, (3) the danger of harm was imminent, and (4) the use of force was necessary." *People v. Dillard*, 319 Ill. App. 3d 102, 106 (2001). Once a defendant claims self-defense, "the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the elements of the charged offense." *Id.* If the State negates any one of the elements of self-defense, the defendant's claim of self-defense must fail. *People v. Lee*, 213 Ill. 2d 218, 225 (2004).

¶ 22    Here, the evidence showed that defendant approached the other car, yelling obscenities. Padilla, Rivera, and Maestre testified that defendant struck Rivera first. While Brabec did not specifically identify defendant, his testimony further supported the conclusion that defendant was the initial aggressor, where he stated that the man who exited the rear car punched first. According to all the testimony, defendant was in the rear car. While Sebion and defendant testified that Rivera struck defendant first, the court accepted the testimony of Brabec, Padilla, Rivera, and Maestre, as it was allowed to do. It is the province of the trier of fact to "resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts." *People v. Gray*, 2017 IL 120958, ¶ 35. The mere fact that two other witnesses testified that events unfolded in a particular way does not mean that their version of events must be accepted by a trier of fact. See *People v. Evans*, 209 Ill. 2d 194, 211 (2004) (the trier of fact need not resolve discrepancies in favor of the defense simply because multiple witnesses agree). Because the court found credible the assertion that defendant struck Rivera first, defendant was found to be the initial aggressor, and defendant's self-defense claim necessarily failed. *Lee*, 213 Ill. 2d at 225.

¶ 23    Moreover, "the trier of fact is free to believe part of one's testimony without believing all of it." *People v. Spaulding*, 68 Ill. App. 3d 663, 675 (1979). Although the court found that Rivera's testimony regarding defendant brandishing a beer bottle was successfully impeached because he had not told anyone else about it, the court accepted other portions of Rivera's testimony. We do not find the court's credibility determinations unreasonable, particularly given its attention to each witness's testimony and its accurate observation that altercations frequently produce discrepant testimony.

¶ 24       Given the court's credibility findings, we do not believe the evidence so "unreasonable, improbable, or unsatisfactory" that it creates a reasonable doubt of defendant's guilt. See *Newton*, 2018 IL 122958, ¶ 24. When viewed in the light most favorable to the State, the evidence does not support defendant's affirmative defense of self-defense and is insufficient to raise a reasonable doubt as to defendant's guilt of aggravated battery on a public way.

¶ 25       In coming to this conclusion, we reject defendant's contention that no rational trier of fact could have found defendant was the aggressor because (1) Brabec was unreliable given that he was moving his car at the time defendant and Rivera began fighting, he did not identify defendant in court, and his testimony was inconsistent with that of other witnesses regarding various details; (2) Rivera had "impeached himself" by testifying that defendant carried a beer bottle; (3) both Sebion and defendant testified that Rivera threw the first punch; and (4) Padilla and Maestre were unable to properly view the beginning of the altercation. Defendant essentially urges this court to reweigh the evidence and to substitute our judgment for that of the circuit court regarding the witnesses' credibility, which we decline to do. See *People v. Logan*, 352 Ill. App. 3d 73, 80-81 (2004) ("[T]he trier of fact is free to accept or reject as much or as little as it pleases of a witness'[s] testimony.").

¶ 26                                III. CONCLUSION

¶ 27       The judgment of the circuit court of Du Page County is affirmed.

¶ 28       Affirmed.